**Ben Miller, OSB #074690**
**BMiller@eugene-or.gov**
Eugene City Attorney's Office
500 E 4th Avenue, Suite 301
Eugene, OR 97401
Telephone: (541) 682-8447
Facsimile: (541) 682-5414

Of Attorneys for Defendants City of Eugene, Chief Chris Skinner, Eugene Police Department, Officer Aarts, and Officer Roberts

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **COEN POELMANN**,<br><br>Plaintiff,<br><br>v.<br><br>**CITY OF EUGENE,** a Local Government in Oregon, **EUGENE POLICE DEPARTMENT, CHIEF CHRIS SKINNER, OFFICER IAN AARTS,** and **OFFICER ANDREW ROBERTS,**<br><br>Defendants.<br><br>**ANDREW ROBERTS** and **IAN AARTS,**<br><br>Third-Party Plaintiffs,<br><br>v.<br><br>**COEN POELMANN,**<br><br>Third-Party Defendant. | Case No: 6:24-cv-01966-AP<br><br>**CITY OF EUGENE, EUGENE POLICE DEPARTMENT, CHIEF CHRIS SKINNER, OFFICER IAN AARTS, AND OFFICER ANDREW ROBERTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

**LR 7-1(a) CERTIFICATION**

Counsel for Defendants City of Eugene, Eugene Police Department, Chief Chris Skinner, Officer Ian Aarts, and Officer Andrew Roberts ("Defendants") certifies he has made a good faith

effort to confer with plaintiff's attorney concerning this motion. Plaintiff has agreed to dismiss all claims against Chief Skinner, the Third Claim for Relief for intentional infliction of emotional distress, and the Fourth Claim for Relief for state law false arrest. Plaintiff has also clarified that his Fifth Claim for Relief is for Excessive Force and not Unreasonable Seizure and that he is not bringing a *Monell* claim. The parties have been unable to resolve the other issues presented in this motion prior to the filing deadline.

## MOTION

This case concerns the arrest of plaintiff by Officer Aarts and Officer Roberts on October 15, 2022. Defendants are moving for summary judgment on the Fifth Claim for Relief under the Fourth Amendment for excessive force. Defendants are not moving for summary judgment against the First Claim for Relief for assault or the Second Claim for Relief for battery, although if the Court dismisses all claims for which it has original jurisdiction, it has discretion not to exercise supplemental jurisdiction. These officers are entitled to summary judgment on the Fourth Amendment excessive force claim because they are entitled to qualified immunity.[1]

## STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The materiality of a fact is determined by the substantive law on the relevant issue, while the authenticity of a dispute is determined by whether a reasonable jury could return a verdict for the nonmoving party in light of the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and

[1] Plaintiff names as a defendant the Eugene Police Department; however, the only proper defendant is the City of Eugene. ORS 30.265(2). The police department would also not be considered a person for purposes of any federal claim. *See U.S. v. Kama,* 394 F.3d 1236, 1239-40 (9th Cir. 2005); *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995).

identify facts which show a genuine issue for trial. *Id*. at 324.

Further, special rules of construction apply to summary judgment motions: all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

**FACTUAL BACKGROUND**

This case concerns the arrest of plaintiff by Officers Aarts and Roberts on October 15, 2022, at the intersection of Hilyard Street and 14th Avenue around 1:00 in the morning. Much of the events pertinent to this case are captured by videos produced by the plaintiff, body worn camera video from the officers, or in-car videos from the officers. References to videos refer to the elapsed time of the video, rather than any time stamp.

On October 15, 2022, at approximately 0100 hours, Officer Aarts and Officer Roberts were working a focused assignment in the west university area on bicycles. Their focus was on alcohol violations and disorderly behavior. The assignment is known as "Party Patrol," but does not necessarily focus on only gatherings at residences but typically addresses behavior that affects the quality of life for residents and citizens in the area. Declaration of Ian Aarts in Support of Defendants' Motion for Partial Summary Judgment ("Aarts Decl.") ¶ 2.

The officers had just finished an arrest at E. 14th Avenue and Hilyard Street. As they were preparing to leave, they observed Mr. Poelmann walking on the public sidewalk of Hilyard Street with an open 16 ounce can of Busch Light Apple beer in his left hand. Aarts Decl., Exhibit 1 ("Aarts BWC") at 00:20-00:32; Declaration of Andew Roberts in Support of Defendants' Motion for Partial Summary Judgment ("Roberts Decl.") Exhibit 1 ("Roberts BWC") at 00:20-00:37. The officers contacted Mr. Poelmann, and he possessed a Busch Light Apple beer in his left hand. Officer Aarts was also seen pouring out the remainder of the liquid from the can that appeared to be at least a full drink worth. Aarts BWC at 00:32-00:37; Roberts BWC at 00:37-00:44.

Officer Aarts began asking Mr. Poelmann for his identification as Mr. Poelmann denied that there was anything in the can. Mr. Poelmann made no attempt to provide his ID or to identify himself but focused on getting his phone to record the officers. Officer Aarts explained to Mr. Poelmann that he would be receiving a citation for either open container or minor in possession and advised Mr. Poelmann to be honest about his identity. He then asked how old Mr. Poelmann was, to which he responded, “19.” Officer Aarts told Mr. Poelmann that he would just receive a minor in possession citation at that point. Aarts BWC at 00:37-0058; Roberts BWC at 00:44-1:00.

Mr. Poelmann began to sound as though he was questioning the officers on how they believed the alcohol was his. Due to his speech being slurred and slow, it was difficult to completely understand what he was saying or asking. After Officer Aarts explained to Mr. Poelmann his observations of him, Mr. Poelmann requested that they use an alcohol tester, presumably referring to a breathalyzer. Aarts BWC at 00:58-01:20; Roberts BWC at 1:00-1:20.

Officer Aarts told him that he could take him to the station if he wanted to perform a breath test. Mr. Poelmann sounded to escalate his voice and his tone and told the officers that he knew they had the test on them and needed to perform it on scene. The officers told him that they did not carry any breath testers with them, and Mr. Poelmann began telling them that he knew they were supposed to have it with them. He began to argue with them that he knew they were supposed to have them. Aarts BWC at 01:20-01:28; Roberts BWC at 1:20-1:34.

Officer Aarts warned Mr. Poelmann that they would take him to jail for open container if he continued to argue, or they could write him a citation for minor in possession. Mr. Poelmann on BWV sounded to say, “Well, I haven’t done anything wrong. What have I done wrong?” Officer Aarts again explained that he was walking down the street with an open container which was a crime, and he was under 21 years of age. He then asked Mr. Poelmann for his name. Mr. Poelmann asked, “Was I drinking it?” He continued to argue and would not provide his name or identifying information. He repeatedly asked, “Was I drinking it?” At that point, Officer Aarts decided to take Mr. Poelmann into custody and stated he was under arrest. Aarts BWC at 01:28-

01:46; Roberts BWC at 1:34-1:51.

As the officers reached to take him into custody, Mr. Poelmann pulled away and said, "No, no, no." He was taken to the ground where he began yelling and tensing his arms, preventing officers from placing his hands behind his back. Officer Roberts used a hair hold to hold Mr. Poelmann's head down. As Mr. Poelmann screamed "Help" and "I didn't do anything wrong," he continued to tense his arms and looked to try and roll his body from under the officers. Officer Roberts delivered at least one strike to Mr. Poelmann's head and Officer Aarts delivered at least one knee strike to Mr. Poelmann's left ribs. Mr. Poelmann kicked Officer Aarts. Aarts BWC at 1:45-2:50; Roberts BWC at 1:51-3:00; Declaration of Kevin Bunday in Support of Defendants' Motion for Partial Summary Judgment ("Bunday Decl.") Ex. 1 ("Bunday BWC") at 0:55; 1:35; Aarts Decl. Ex. 2 and Ex. 4 ("Coen Poelmann_1.MOV") at 0:24.

A crowd began to form around the officers as Mr. Poelmann screamed. As cover officers arrived, they can be seen and heard on video having to actively keep the crowd back. Aarts BWC at 2:50-3:09; Roberts BWC at 3:00-3:36.

Once Mr. Poelmann was in handcuffs, he was escorted to the front of a nearby patrol car where he was searched. As he was walked to the car, he appeared to be attempting to get the crowd's attention by yelling that he had the incident on recording. As officers attempted to walk him to the car, he looked to be fighting against them with the intent of trying to speak to the crowd. He yelled for the crowd to record. Officers had to hold Mr. Poelmann against the front of the patrol car as they searched his pockets. Aarts BWC at 3:30-4:40; Roberts BWC at 3:53-4:46.

After Mr. Poelmann was searched, he was walked to the back door of the car to be placed in the back seat. He again looked towards the crowd. Sergeant Stotts, who was managing the crowd, told Mr. Poelmann, "That way, not this way, that way," as he pointed towards the patrol car. Aarts BWC at 4:40-4:48; Roberts BWC at 4:46-4:52.

Mr. Poelmann aggressively began yelling, "I want my phone" and appeared to be turning towards Officer Roberts as he said it. Officer Roberts, who was escorting Mr. Poelmann by his right arm, grabbed Mr. Poelmann by the hair and directed him to the back door of the car.

Shortly after, Mr. Poelmann turned towards Officer Roberts again and yelled aggressively in his face, "You're fucking fired!" Officer Roberts took Mr. Poelmann to the ground in the grassy area next to the patrol car. He immediately requested a spit hood and an FRD (flexible restraint device). Officer Roberts can be heard explaining that Mr. Poelmann had spit on him. Aarts BWC at 4:48-5:20; Roberts BWC at 4:52-5:25.

A spit hood was applied as well as an FRD that clasped Mr. Poelmann's feet together and then attached to his handcuffs behind his back. The FRD kept Mr. Poelmann from kicking or having much control over his legs. He was placed in the backseat of a patrol car and transported to jail at that point. Aarts BWC at 5:20-7:40; Roberts BWC at 5:25-7:45; Bunday BWC at 7:30-42:30. Plaintiff received no medical treatment at the jail but later went to an Urgent Care to attempt to document his injuries, which included an abrasion to his chin. Declaration of Ben Miller in Support of Defendants' Motion for Partial Summary Judgment ("Miller Decl.") Ex. 1 ("Poelmann Depo.") at 66:9-14, 67:24-69:17; Bunday BWC at 45:20. The incident was reviewed by Officer Aarts and Officer Roberts' chain of command, as well as the auditor's office. Chain of command deemed the use of force as within policy. Miller Decl. Ex. 2 (COE 000086-000100).

Plaintiff was initially not charged by the Lane County District Attorney, and the case was referred to the City Prosecutor. Miller Decl. Ex. 3 (COE 000462). The City Prosecutor filed a Complaint on December 12, 2022, accusing plaintiff of resisting arrest and harassment. Miller Decl. Ex. 4 (COE 000459). The Complaint was later amended to include charges of Open Container and Disorderly Conduct. Miller Decl. Ex. 5 (COE 000755-000757). Following negotiations, plaintiff entered a deferred prosecution to a Minor in Possession charge in exchange for having his other charges dismissed. Miller Decl. Exs. 6 and 7 (COE 000630, 000760). This lawsuit followed.

## POINTS AND AUTHORITIES

### 1. Excessive Force

"A police officer's use of . . . force on a person [is] a seizure subject to the [reasonableness requirement of the] Fourth Amendment." *Hyer v. City & Cnty. of Honolulu,* 118

F.4th 1044, 1060 (9th Cir. 2024) (citing *Graham v. Connor,* 490 U.S. 386, 388 (1989)). In evaluating a "claim of excessive force, [courts] ask whether the officers' actions were objectively reasonable in light of the facts and circumstances confronting them." *Williamson v. City of Nat'l City,* 23 F.4th 1146, 1151 (9th Cir. 2022) (simplified) (quoting *Rice v. Morehouse,* 989 F.3d 1112, 1121 (9th Cir. 2021)); *see also Sabbe v. Wash. Cnty. Bd. of Comm'rs,* 84 F.4th 807, 821 (9th Cir. 2023) (stating that *Graham* "provides the framework that governs").

Courts engage in a three-part inquiry to "determine whether an officer's actions were objectively reasonable[.]" *Williamson,* 23 F.4th at 1151; *see also Ramsey v. City of Lake Havasu City,* No. 23-3244, 2025 WL 66048, at *1 (9th Cir. Jan. 10, 2025) (recognizing that this circuit "approach[es] an excessive force claim in three stages" (quoting *Thompson v. Rahr,* 885 F.3d 582, 586 (9th Cir. 2018))). First, courts consider "the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted[.]" *Williamson,* 23 F.4th at 1151 (quoting *Rice,* 989 F.3d at 1121); *Thompson,* 885 F.3d at 586 (same). Second, courts consider "the government's interest in the use of force[.]" *Williamson,* 23 F.4th at 1151 (quoting *Rice,* 989 F.3d at 1121). Third, courts consider "the balance between the gravity of the intrusion on the individual and the government's need for that intrusion." *Id.* (quoting *Rice,* 989 F.3d at 1121). Ultimately, courts must "judge the reasonableness of a particular use of force 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight[,]'" *id.* (quoting *Rice,* 989 F.3d at 1121, which quoted *Graham,* 490 U.S. at 396), and keep in mind that "police officers 'are not required to use the least intrusive degree of force possible.'" *Id.* (quoting *Lowry v. City of San Diego,* 858 F.3d 1248, 1256 (9th Cir. 2017) (en banc)).

**2. The Officers are Entitled to Qualified Immunity**

Officers Aarts and Roberts are entitled to summary judgment on the basis of qualified immunity. Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mueller v. Auker (Mueller II*), 700 F.3d 1180,

1185 (9th Cir. 2012) (*quoting Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244-45 (2012)) (internal quotation marks omitted). The doctrine "gives government officials breathing room to make reasonable but mistaken judgments" and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 583 U.S. 731, 743, 131 S. Ct. 2074 (2011) (*quoting Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092 (1986)). It "makes allowance for some constitutional mistakes," *Mueller II*, 700 F.3d at 1185-86, such as "when an officer reasonably believes that his or her conduct complies with the law," *Pearson v. Callahan*, 555 U.S. 223, 244, 129 S. Ct. 808 (2009).

A qualified-immunity analysis requires the court to ascertain (1) whether, "the facts alleged show the officer's conduct violated a constitutional right," and (2) "whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151 (2001), *overruled in part by Pearson*, 555 U.S. 223 (two-step sequence is not mandatory).

In determining whether a government official's conduct violates clearly established law, the test is whether, "at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right. We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Al-Kidd*, 131 S. Ct. at 2083 (*quoting Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034 (1987)) (brackets, citation, and internal quotation marks omitted). The Supreme Court has repeatedly stated "not to define clearly established law at a high level of generality." *Id.* at 2084 (citation omitted). "The inquiry . . . must be undertaken in the light of the specific context of the case, not as a broad general proposition." *Mueller II*, 700 F.3d at 1185 (*quoting Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596 (2004)) (internal quotation marks omitted). That clearly established law must be "particularized" to the facts of the case.

In this case plaintiff will be unable to show that the minimal uses of force, or the restraints like handcuffing, a spit hood, or a flexible restraint device, would be clearly

unconstitutional to every officer. Plaintiff was resistive, younger, and stronger than the officers. The Body Worn Cameras depict what occurred, and there was an aggressive crowd surrounding the two officers who were initially alone and had their attention diverted between holding onto plaintiff and the crowd. Plaintiff was warned repeatedly not to resist and that more force would be used if he did not follow their instructions. Instead, he repeatedly twisted around, yelled for the crowd, and propelled saliva into Officer Roberts' face.

In the case of the takedowns, while that is an intermediate use of force, that degree of force was reasonable under the totality of the circumstances. *See Acosta v. City of Costa Mesa*, 718 F.3d 800, 826 (9th Cir. 2013) ("[W]hen later placing Acosta under arrest, Acosta was kicking and flailing his body to actively resist the police. Holding him by his limbs to control him and prevent him from injuring an officer was also not unreasonable or excessive."). Even assuming that the take-down was an unreasonable use of force, the officers are entitled to qualified immunity because, at the time of the encounter, the case law did not place the officers on notice that the take-down was an unreasonable use of force under the Fourth Amendment. *Roe v. City of Portland*, Case No. 3:22-cv-01193-SB, 2025 U.S. Dist. LEXIS 177811, *54-64 (D. Or. Sept. 11, 2025) (granting qualified immunity for takedown maneuver).

In the case of handcuffing, that is acceptable even if the crime is minor and the procedure is inconvenient and embarrassing. *Atwater v. City of Lago Vista,* 532 US 318, 354-55 (2001). Here, the officers' use of handcuffs was no more than necessary to fulfill their duty. While excessively tight handcuffing can be unlawful, that is only in situations of significant damage to hands or wrists or when officers refused requests to loosen handcuffs. *See, e.g. Wall v. Cnty. of Orange,* 364 F.3d 1107, 1112 (9th Cir. 2004) (officers handcuffed arrestee "extremely tight," picked him up by his handcuffed arms and threw him upside down and headfirst into patrol car; causing permanent nerve damage); *LaLonde v. Cnty. of Riverside,* 204 F.3d 947, 960 (9th Cir. 2004) (officers refused to loosen handcuffs even after arrestee complained). Here, plaintiff suffered no physical injury to his wrists, and his handcuffs were adjusted at the jail once it was safe to do so. Bunday BWC at 38:00-41:50.

In the case of the spit hood, a spit mask or spit hood is "properly applied not only to prevent spitting but whenever there is a threat of transmission of bodily fluid." *Allen v. Rivera*, 626 F. App'x 710, 712 (9th Cir. 2015); *see also Robinson v. Cnty. of Shasta*, 384 F. Supp. 3d 1137, 1159-60 (E.D. Cal. 2019) ("The court has found no clearly established law predating [the incident] that would put every reasonable officer on notice that using a spit hood in this scenario constitutes a constitutional violation, and certainly no authority that 'place[d] the . . . constitutional question beyond debate.'"). Plaintiff will be unable to point to a case in which a court found that placing a spit mask on a suspect constituted excessive force. *Perez v. City of Fresno*, 591 F. Supp. 3d 725, 752 (E.D. Cal. 2022); *Farris v. Oakland Cnty., Michigan*, 96 F.4th 956, 966 (6th Cir. 2024) ("Farris next claims that the deputies used excessive force by putting a spit hood on her head. But she identifies no case that would have barred the deputies from temporarily covering her mouth and nose under the circumstances. . . . [R]easonable officers could believe that the Fourth Amendment permitted them to temporarily use a spit hood as a preemptive measure on an 'uncooperative' detainee like Farris.").

Finally, in the case of the flexible restraint device, the Ninth Circuit does not forbid the use of such restraints. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 479 (9th Cir. 2007) ("We agree with [the Eighth Circuit] that, in some situations, the need to maintain control of a person who physically struggled while being taken into custody might reasonably call for the use of hobble restraints."); *Slater v. Deasey*, 789 F. App'x 17, 20-21 (9th Cir. 2019) (finding first application of hobble restraint in which ankles were hobbled and connected to handcuffs from the back was not excessive).

*Conley v. City of Eugene* is in accord. In that case, Judge Kasubhai found that the plaintiff failed to meet her burden of showing that the law is clearly established such that every reasonable officer would understand that grabbing an arrestee without warning and wrestling, punching, and attempting to taser him during the struggle to handcuff him amounted to an excessive use of force. Case No. 6:22-cv-01144-MTK, 2025 U.S. Dist. LEXIS 102976 *27-31 (D. Or. May 30, 2025). As such he granted them qualified immunity.

The obligation for a plaintiff seeking to defeat an assertion of qualified immunity to "identify a case that put [the officer] on notice that his specific conduct was unlawful" is "especially important in the Fourth Amendment context." *Rivas-Villegas v. Cortesluna,* 142 S. Ct. 4, 8 (2021) (per curiam) (citation omitted). This is because "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." *Mullenix,* 577 U.S. at 12 (citation omitted). Plaintiff must "identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." *White v. Pauly,* 580 U.S. 73, 79 (2017) (per curiam). Plaintiff will be unable to meet that burden.

**3. Supplemental State Law Claims**

Where a district court dismisses "all claims over which it has original jurisdiction," it may, in its discretion, "decline to exercise supplemental jurisdiction" over pendent state law claims. 28 U.S.C. § 1367(c)(3); *Lacey v. Maricopa County*, 693 F.3d 896, 940 (9th Cir. 2012). If the Court dismisses the federal claims, the Court should decline to exercise supplemental jurisdiction over plaintiff's claims under state law.

**CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' Motion for Partial Summary Judgment. The Court should enter judgment in favor of defendants on the Fifth Claim for Relief, decline to exercise supplemental jurisdiction, award them their reasonable costs, and grant such further and additional relief as is just and proper.

DATED this 3rd day of April, 2026.

**CITY OF EUGENE**

By: s/ Ben Miller
Ben Miller, OSB #074690
BMiller@eugene-or.gov
Telephone: (541) 682-8447
Facsimile: (541) 682-5414

Of Attorneys for Defendants City of Eugene, Chief Chris Skinner, Eugene Police Department, Officer Aarts, and Officer Roberts

## CERTIFICATE OF SERVICE

I certify that on this 3rd day of April, 2026, I served or caused to be served a true and complete copy of the foregoing **CITY OF EUGENE, EUGENE POLICE DEPARTMENT, CHIEF CHRIS SKINNER, OFFICER IAN AARTS, AND OFFICER ANDREW ROBERTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** on the party or parties listed below as follows:

**X** Via CM / ECF Filing

**X** Via First Class Mail, Postage Prepaid

______ Via Email

______ Via Personal Delivery

Leah A. Johnson
12755 S.W. 69th Ave., Ste. 200
Portland, OR 97223

Of Attorneys for Plaintiff

**CITY OF EUGENE**

By: s/ Ben Miller
Ben Miller, OSB #074690
BMiller@eugene-or.gov
Telephone: (541) 682-8447
Facsimile: (541) 682-5414

Of Attorneys for Defendants City of Eugene, Chief Chris Skinner, Eugene Police Department, Officer Aarts, and Officer Roberts